IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JHF VISTA USA, LTD.
v.

Civil No. CCB-09-30

JOHN S. CONNOR, INC. and
ESTES EXPRESS LINES

MEMORANDUM

Now pending before the court is a motion for summary judgment filed by the defendant, John S. Connor, Inc. ("J.S. Connor"), against the plaintiff, JHF Vista USA ("JHF Vista"). JHF Vista seeks to recover under negligent misrepresentation, breach of contract, and the Maryland Consumer Protection Act ("the Act") for damage caused to its printer when J.S. Connor served as a shipping broker. The damaged printer was unavailable for plaintiff's trade show, causing further economic harm. JHF Vista opposes J.S. Connor's motion, contending there are material issues of fact that preclude summary judgment. Oral argument was held on January 6, 2010. For the following reasons, the court will deny defendant's motion for summary judgment in part and grant it in part.

BACKGROUND

In spring 2006, JHF Vista company president Dwight Zilinskas ("Zilinskas") conducted negotiations with J.S. Connor sales representative James Budd ("Budd") to secure J.S. Connor's services as its customs broker or freight forwarder. A freight forwarder is, essentially, a shipping agent who specializes in aiding companies that need to ship goods in various transactions involving interstate and overseas tariffs. At the time, JHF Vista was a new company with little experience in the import business, which caused it to seek J.S. Connor's services.

In furtherance of their business relationship, J.S. Connor faxed a Customs Power of Attorney ("Power of Attorney") to JHF Vista on June 14, 2006. (Pl.'s Resp. at Ex. 5, Customs Power of Attorney; *see also* Ex. 2, Budd Dep. at 8.) According to JHF Vista, the fax consisted of

one blurred page and did not include a second page with the "Terms and Conditions of Service" ("Terms and Conditions") that J.S. Connor now insists were included. (Pl.'s Resp. at Ex. 1, Zilinskas Dep. at 18-19; Def.'s Mot. at Ex. A, Connor Aff. at 2) Nevertheless, Zilinskas executed the Power of Attorney and faxed it back to Budd the same day. (Pl.'s Resp. at Ex. 5, Customs Power of Attorney; *see also* Def.'s Mot. at Ex. A, Connor Aff. at 2.) The parties also orally agreed that JHF Vista's shipping needs would be "handled on a case by case basis." (Pl.'s Resp. at Ex. 3, Wilson Dep. at 9-10.) [1]

Subsequently, JHF Vista used J.S. Connor's services several times prior to the incident at issue. Each transaction was arranged by telephone, with separate invoices faxed and then mailed at a later date. (Pl.'s Resp. at Ex. 4, Eileen Dep. at 25; Def.'s Mot. at Ex. B, Wilson Dep. at 89.) J.S. Connor asserts that for each of these transactions its employees at some point sent an invoice that included its Terms and Conditions on the back of the paper. (Def.'s Mot. at Ex. B, Wilson Dep. at 92.) The Terms and Conditions include a limitation of liability clause which states:

(a) Except as specifically set forth herein, Company makes no express or implied warranties in connection with its services;
(b) Subject to (c) below, Customers [sic] agrees that in connection with any and all services performed by the Company, the Company shall only be liable for its negligent acts, which are the direct and proximate cause of any injury to Customer, including loss or damage to Customer's goods, and the Company shall in no event be liable for the acts of third parties;
(c) In connection with all services performed by the Company, Customer may obtain additional liability coverage, up to the actual or declared value of the shipment or transaction by requesting such coverage and agreeing to make payment therefor, which request must be confirmed in writing by the Company prior to rendering services for the covered transaction(s).
(d) In the absence of additional coverage under (b) above, the Company's liability shall be limited to the following:

[1] J.S. Connor Employee Budd testified in his deposition that it is his "normal practice" to send the terms and conditions with the Power of Attorney but that he had no proof he sent the second page to JHF Vista. (Pl.'s Resp. at Ex. 2, Budd Dep. at 24.) J.S. Connor Employee Wilson testified that she faxed and then mailed invoices for each of the shipments and that each of the invoices contained the terms and conditions of service on the back. It is unclear from the phrasing of the question whether she meant she included the terms and conditions only with the mailed invoices or also with the faxed invoices. (Pl.'s Resp. at Ex. 3, Wilson Dep. at 89-91.)

i. Where the claims arises [sic] from activities relating to customs brokerage, $50.00 per shipment or transaction, or
ii. Where the claims arises from activities relating to "Customs business," $50.00 per entry or the amount of brokerage fees paid to Company for entry, whichever is less;

(e) In no event shall Company be liable for consequential, indirect, incidental, statutory or punitive damages even if it has been put on notice of the possibility of such damages.

(Def.'s Mot. at Ex. A, Connor Aff. at Ex. 1.) The Terms and Conditions also include a section regarding the provision of insurance which states, "[u]nless requested to do so in writing and confirmed to customer in writing, Company is under no obligation to procure insurance on Customer's behalf; in all cases, Customer shall pay all premiums and costs in connection with procuring requested insurance." (*Id.*)

JHF Vista claims that in addition to not receiving the second page of the Power of Attorney, the Terms and Conditions were not included in the parties' correspondence sufficiently to give it notice of the limitation on liability for the transaction at issue. It is not disputed that there were only three transactions prior to the March 2007 shipment with invoices dated June 20, August 30, and September 1, 2006. The faxed invoices do not appear to include the back page where the Terms and Conditions appear, although the mailed invoices apparently did. (*See* Pl.'s Resp. at Ex. 6; cf. Hearing Joint Ex. 1, 3/05/07 original invoice.)

The transaction at issue involves the shipment of an expensive printer JHF Vista imported from China. JHF Vista employee Eileen Zilinskas ("Eileen") contacted J.S. Connor's Kalindi Wilson ("Wilson") by telephone in late February 2007 to arrange shipment of the printer from Miami Beach to Las Vegas. They arranged the details by email on February 27, Wilson emailed a quote to Eileen on March 1, and Eileen accepted J.S. Connor's services for the shipment on March 2. The parties agree that on either March 1 or March 2, Eileen inquired about insurance. (Pl.'s Resp. at Ex. 3, Wilson Dep. at 30-32; Pl.'s Resp. at Ex. 4, Eileen Dep. at 25.) According to Wilson's deposition testimony, Wilson told Eileen during this conversation that the shipping company covered shipments of certain values and classes based on a complicated mathematical formula and advised Eileen that Eileen would need to contact the shipping company herself to determine whether the printer qualified for the insurance. (Pl.'s

Resp. at Ex. 3, Wilson Dep. at 30-32; Pl.'s Resp. at Ex. 4, Eileen Dep. at 25.) According to Eileen, however, Wilson assured her that the printer cargo was "fully insured."[2] (Pl.'s Resp. at Ex. 4, Eileen Dep.) The shipment took place on March 5. The printer was destroyed en route and was uninsured. Consequently, JHF Vista had no printer to display at its Las Vegas convention booth, severely injuring its business opportunities. (Pl.'s Resp. at Ex. 1, Zilinskas Dep. at 35.) This lawsuit followed.

ANALYSIS

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court has clarified this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal

[2] Plaintiffs cite to Eileen's deposition at page 24 to support that Wilson made this statement, but they did not provide the court with this page. In addition, Zilinskas testified that Eileen told him Wilson said the machine was insured. (*See* Pl.'s Resp. at Ex. 1, Zilinskas Dep. at 43.)

quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

A. Applicability of the "Terms and Conditions of Service" to the Breach of Contract Claim

The primary issue before the court is whether the Terms and Conditions language is binding on the parties for the disputed transaction. If the language is part of the parties' contract, it may eliminate J.S. Connor's liability entirely or limit it to fifty dollars. The parties have devoted considerable attention to whether their relationship was governed by a single contract (the Power of Attorney) or was actually several independent transactions. As further discussed below, it appears from the record that each shipment was a separate contract; nevertheless the terms provided in the Power of Attorney apply to each transaction. It further appears, however, that there is a material issue of fact regarding which terms were included in the Power of Attorney and the subsequent contracts. Maryland contract law applies.

As the Court of Appeals of Maryland has recognized, appellate courts have had "relatively few occasions to analyze powers of attorney." *King v. Bankerd*, 492 A.2d 608, 611 (Md. 1985). The court therefore found it helpful to provide a definition for such documents. It wrote, "This instrument, which delineates the extent of the agent's authority, is a *contract* of agency that creates a principal-agent relationship." *Id.* (emphasis added). Determining whether a power of attorney is an entire contract or a severable contract may be difficult and must be determined based on the intent of the parties in each case. *See Brewster v. Frazier*, 32 Md. 302 (1870). Courts should determine the parties' intent by evaluating the language and purpose of the document "in light of the surrounding circumstances." *King*, 492 A. 2d at 611 (citing *Kaminski v. Wladerek*, 131 A. 810, 813-14 (Md. 1926); *Am. Bonding Co. v. Ensey*, 65 A. 921, 925 (Md. 1907)).

Here, the parties executed the Power of Attorney and then conducted business transactions pursuant to that agreement. It is clear from the motions and attached depositions that the parties intended to create an overarching relationship to control the multiple shipping contracts that would follow. *See, e.g.*, *Kraft v. Fancher & Brown*, 44 Md. 204 (1876) (applying the terms of a power of attorney to a transaction between a shipping agent and its client).

Thus the parties' relationship is best described as a series of contracts governed by a single Power of Attorney.

Although the Power of Attorney applies to the parties' contractual obligations for the disputed transaction, it does not necessarily follow that the Terms and Conditions limit the defendant's liability. While it is true that under Maryland law a party who signs a contract without first reading it "cannot avoid the contract's effect by pleading ignorance," *Cornell v. Council of Unit Owners Hawaiian Village Condos., Inc.*, 983 F. Supp. 640, 646 (D. Md. 1997), this case is distinguishable in that JHF Vista claims it never even knew the page of additional terms existed. Furthermore, this is not the type of case in which the party pointing to a missing page knew or should have known the page was absent. In such cases, courts have often held that the missing terms are incorporated by reference, or that the signee should have inquired about their absence.[3] *See, e.g., Sasso v. Travel Dynamics, Inc.*, 844 F. Supp. 68, 73 (D. Mass. 1994) (finding that plaintiffs had sufficient notice of additional contract pages where cover page instructed them to read "attached pages 1-5"); *In re Int'l Profit Assocs., Inc.*, 286 S.W.3d 921, 923 (Tex. 2009) (imputing knowledge of missing contract page to signee where signature page states the number of pages and pages were numbered "2 of 4," etc.); *Ray Tucker & Sons, Inc. v. GTE Directories Sales Corp.*, 571 N.W.2d 64, 68-69 (Neb. 1997) (holding that signee was placed on notice of terms on absent page because of the "specific and conspicuous reference" to such terms on the signature page).

The faxed copy of the Power of Attorney at issue here was so blurred that any language suggesting the existence of a second page was illegible, and it consequently did not put JHF Vista on notice that there should have been an additional page of terms included. *See, e.g., Meacham v. Dioguardi*, 8 P.2d 293, 294-95 (Wash. 1932) (finding that signee was not put on notice of contract defect where there was nothing on the first page to indicate it was incomplete or missing a page). Therefore, whether the Terms and Conditions were included on a second page in the facsimile is a material issue of fact in dispute regarding whether that page

[3] The recipient of a blurred contract does not appear to have a legal duty to request a legible copy. *See, e.g., Nemeth v. General S.S. Corp, Ltd.*, 694 F.2d 609, 611-12 (9th Cir. 1982) (finding that a "microscopic and blurry" provision in a bill of lading did not provide reasonable notice of its terms). J.S. Connor has not provided any case law to the contrary.

is part of the parties' contract. *See, e.g.*, *Martin v. Citibank*, 883 N.Y.S.2d 483, 485 (N.Y. App. Div. 2009) (denying summary judgment where there was a material issue of fact regarding plaintiff's receipt of the full contract).

Material issues of fact also preclude a finding that the parties established a course of dealing that incorporated the Terms and Conditions. Maryland law defines a course of dealing as "a sequence of previous conduct between the parties to an agreement which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." Md. Code Ann., Commercial Law § 1-205 (West 2009); *see also* Restatement (Second) of Contracts: Course of Dealing § 223 (1981) (same). The existence of a course of dealing is a question of fact that is usually reserved for a jury, but a court may find a course of dealing as a matter of law where the material facts are uncontested. *Great N. Ins. Co. v. ADT Sec. Servs. Inc.*, 517 F. Supp. 2d 723, 742 (W.D. Penn. 2007).

Many courts have found a course of dealing where the parties engaged in a considerably greater number of transactions than are alleged here. *See, e.g.*, *Gov't of the United Kingdom of Great Britain and N. Ireland v. Northstar Servs., Ltd.*, 1 F. Supp. 2d 521, 524-25 (D. Md. 1998) (finding a course of dealing where identical terms were sent on over 100 invoices); *Insurance Co. of N. Am. v. NNR Aircargo Serv. (USA), Inc.*, 201 F.3d 1111, 1114 (9th Cir. 2000) (finding a course of dealing where forty-seven invoices were sent over a three-year period); *Schulze and Burch Biscuit Co. v. Tree Top, Inc.*, 831 F.2d 709, 715 (7th Cir. 1987) (finding a course of dealing where the parties had previously engaged in nine transactions "with a certain type of charge expressly listed"); *Well Luck Co., Inc. v. F.C. Gerlach & Co., Inc.*, 421 F. Supp. 2d 533 (E.D.N.Y. 2005) (finding a course of dealing where the parties conducted over 150 transactions); *Capitol Converting Equip., Inc. v. LEP Transport, Inc.*, 750 F. Supp. 862, 867 (N.D. Ill. 1990) (finding a course of dealing where hundreds of invoices were sent, regardless of whether the parties conducted business for "twenty years or for twelve"). Courts have also found a course of dealing where there have been relatively few transactions in conjunction with other circumstances suggesting the parties were in agreement. *See, e.g.*, *Indep. Mach., Inc. v. Kuehne & Nagel, Inc.*, 867 F. Supp. 752, 764-65 (N.D. Ill. 1994) (finding a course of dealing where a party

sent five invoices that referred the reader to terms and conditions on the reverse side in capital letters and red print and the recipient did not claim it was unaware of the exculpatory provisions contained therein); *ADT*, 517 F. Supp. 2d at 743-44 (finding a course of dealing based on two prior transactions including signed service tickets in conjunction with several other factors including that the plaintiff "completely failed" to argue against finding a course of dealing, "which the Court interpret[ed] as conceding this point").

In contrast to the cases in which courts have found a course of dealing as a matter of law, here the parties do not even agree about how many times the Terms and Conditions were sent. Furthermore, even if JHF Vista received the Terms and Conditions on the back of mailed invoices prior to the March transaction, the receipt of three or four invoices would not necessarily be sufficient to establish a course of dealing without additional circumstances indicating that the parties agreed to the terms. Summary judgment is therefore inappropriate as to the applicability of the limitation of liability.

B. Negligent Misrepresentation

J.S. Connor also seeks summary judgment on JHF Vista's claim for negligent misrepresentation, based on Wilson's alleged statement to Eileen that the printer cargo was "fully insured." To establish a claim for negligent misrepresentation under Maryland law, a plaintiff must prove:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserted a false statement; (2) the defendant intended that the statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, took action in reliance on the statement, and (5) the plaintiff suffered damage proximately caused by the defendant's negligence.

*Swinson v. Lords Landing Village Condo.*, 758 A.2d 1008, 1016 (Md. 2000). Assuming the parties are business people with reasonably equal bargaining power, the duty of care must be independent of any contractual obligation. *Heckrotte v. Riddle*, 168 A.2d 879, 882 (Md. 1961); *see also Martin Marietta Corp. v. Int'l Telecomm. Satellite Org.*, 991 F.2d 94, 98 (4th Cir. 1992) (amended in 1993) (same). In *Heckrotte*, the Maryland Court of Appeals explained, "The mere

negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort." 168 A.2d at 882.

Here, JHF Vista claims J.S. Connor breached its "confidential relationship duty as Plaintiff's shipping agent." (Complaint at ¶¶ 27-29 (internal quotation omitted).) To whatever extent this duty existed, it arose from the parties' contractual relationship, and only economic damages are alleged. JHF Vista has raised no material issues of disputed fact, and summary judgment in favor of the defendant is therefore appropriate on this claim.

C. Maryland Consumer Protection Act

Finally, J.S. Connor seeks summary judgment for its alleged violation of the Maryland Consumer Protection Act ("the Act"), arguing that JHF Vista is not a "consumer" under the act and therefore cannot bring the claim. (Def.'s Mot. at 8-9.) Under §13-101 of the Act, "consumer" is defined as "an actual or prospective purchaser, lessee, or recipient of consumer goods, consumer services, consumer realty, or consumer credit." Even assuming, without deciding, that there are some rare circumstances under which a business might qualify as a consumer, nothing here suggests that JHF Vista is a "consumer" within the meaning of the Act. *See Penn-Plax, Inc. v. L. Schultz, Inc.*, 988 F. Supp. 906, 909-10 (D. Md. 1997). Summary judgment will therefore be granted for the defendant on this count.

CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment will be granted in part and denied in part. A separate Order follows.

| February 5, 2010 | /s/ |
|---|---|
| Date | Catherine C. Blake |
| | United States District Judge |